UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VI KIET VICTOR DIEP,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et. al.,<br>Respondents. | No. 1:26-cv-01664-DC-DMC-HC<br><br>AMENDED FINDINGS AND RECOMMENDATIONS |

Petitioner, an immigration detainee who is proceeding with retained counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondents filed a motion to dismiss, ECF No. 7, and Petitioner filed an opposition/traverse, ECF No. 8. Petitioner additionally filed a statement of supplemental authorities, ECF No. 9. The undersigned vacated the prior findings and recommendations, ECF No. 12, and issues these amended findings and recommendations.

## I. BACKGROUND

Petitioner asserts that he is "ethnically Chinese," but fled the Vietnam War in 1978, arriving in the United States as a child refugee. See ECF No. 1, pg. 2. According to Petitioner, he "was granted permanent residency in 1980," id. at 6, but "was detained by ICE and

placed in removal proceedings after his release on parole for a 1996 conviction," id. at 2.[1] Petitioner contends that the BIA affirmed Petitioner's order of removal in July 2025, id. at 4, but Respondents have "been unable to execute his removal." Id. at 2. Petitioner argues his "prolonged detention without an end in sight violates his right to due process. Civil immigration detention is only valid for the period reasonably necessary to secure a person's removal from the United States." Id. (citing Zadvydas v. Davis, 533 U.S. 678, 689 (2001)). According to Petitioner, his removal is unlikely because "Vietnam has only accepted a small fraction of pre- 1995 refugees for removal, focusing on people with well-documented Vietnamese identity, origin, and family ties. Because Mr. Diep lacks the linguistic and cultural markers of 'Vietnameseness,' an expert confirms that his removal—at any point—is exceedingly unlikely." Id. at 2.

As to Petitioner's criminal convictions, Petitioner contends he "is deeply remorseful for his actions, knowing the consequences are irreversible" and during his incarceration, Petitioner asserts that he "worked to understand himself and the reasons he caused such harm. He learned that he needs to confront the past in order to learn, grow and change." Id. at 8. Petitioner asserts that he

> was only 21 years-old in 1992 when he participated in a crime that resulted in the death of a nine year-old child. He was arrested for that crime in 1993 and convicted in 1996 of Cal. PC §§ 187 (felony murder), 212.5(b) (robbery), 207 (kidnapping), 182.1/207 (conspiracy to commit kidnapping) following a jury trial. Exh. A at ¶ 5. He was initially sentenced to an indeterminate term of life without the possibility of parole on the murder, and a term of five years for the robbery plus a one-year sentence for the personal use enhancement. Exh. A at ¶ 6.
>
> [¶¶27-30 omitted]
>
> In August 2023, after 30.5 years incarcerated, the California Board of Parole Hearings granted Diep release on parole after finding that he does not pose an unreasonable risk of danger to the community. The governor declined to disturb the grant of parole. *Id*. at ¶ 7. On the date of his scheduled release in January 2024, he was arrested by Immigration & Customs Enforcement.
>
> Id. at 7-8.

[1] Petitioner provides extensive background information regarding his family's experience living in the United States, how the "turmoil at home" resulted in Petitioner dropping out of high school, and ultimately led to Petitioner's involvement "in a crime that resulted in the death of a nine year-old child" in 1992, when Petitioner was 21-years old. See id. at 6-8. The Courts' summary here includes the facts most relevant to Petitioner's claims.

Respondents provide the following summary of Petitioner's removal proceedings since his detention:

> On January 24, 2024, Petitioner was released the custody of the California Department of Corrections and Rehabilitation (CDCR), Correctional Training Facility (CTF) and taken into custody by a DO with ERO. On January 24, 2024, ERO also served the Petitioner with a Notice to Appear. On April 5, 2024, a Form I-261 was filed to add a charge of removability pursuant to the additional allegations related to his conviction for Second Degree Robbery with an enhancement for using a deadly weapon for which he was sentenced to a total of six years in prison.
>
> On February 5, 2025, Petitioner was ordered removed to Vietnam by an Immigration Judge after being removable pursuant to INA § 237(a)(2)(A)(iii) [8 USC § 1227(a)(2)(A)(iii)]. On July 11, 2025, the Board of Immigration Appeals (BIA) dismissed Petitioner's appeal. On January 22, 2026, the BIA granted Petitioner's motion to reopen and remanded the case to immigration court to make a new determination on the charges of removability. On January 29, 2026, the Immigration Judge again sustained the charge of removability and entered an order of removal to Vietnam. On February 27, 2026, the BIA issued a briefing schedule and ordered briefing deadlines by both parties on March 20, 2026.
>
> ECF No. 7, pgs. 2-3 (internal citations omitted).

Petitioner previously sought habeas relief on October 11, 2024, and "Magistrate Judge Oberto granted Diep's petition, finding that his ongoing detention without a neutral review violated his right to procedural due process. ECF No. 1, pg. 11 (citing Diep v. Andrews, No. 1:24-01238-SKO, 2025 WL 604744 (E.D. Cal. Feb. 25, 2025)). Petitioner was provided a bond hearing on March 18, 2025, where an immigration judge denied Petitioner's release "finding Mr. Diep a danger because for [sic] failure to provide 'persuasive evidence that he presents no risk of recidivism.'[2] The IJ further found him a flight risk because she had denied his applications for relief from removal." Id. (quoting ECF No. 1-3, pgs. 5-6). Petitioner appealed the bond decision and the appeal was dismissed in July 2025. See ECF No. 1-3, pg. 6.

According to Petitioner, while the bond appeal was pending, the BIA issued an administratively final order of removal for Petitioner which "shifted the statutory detention authority from 8 U.S.C. § 1226(c) to the "removal period" of 8 U.S.C. § 1231(a)(2)." ECF No. 1,

[2] The undersigned makes no finding as to the sufficiency of Petitioner's bond hearing because Petitioner does not raise such claim nor is the record developed to consider such issue. However, Respondents were ordered to "justify Petitioner's continued detention by clear and convincing evidence," Diep v. Wofford, No. 1:24-CV-01238-SKO (HC), 2025 WL 604744, at *5 (E.D. Cal. Feb. 25, 2025), and as presented by Petitioner, it is not clear the IJ applied the proper burden of proof.

pg. 11. Petitioner contends that because Petitioner filed a petition for review to the Ninth Circuit without an accompanying stay of removal request, "the 90-day removal period ran, and the detention authority shifted to § 1231(a)(6)." Id. Petitioner asserts that "[d]espite the unstayed final order of removal, DHS did not execute Diep's removal to Vietnam in the six months that lapsed after the removal order was issued and before the Board ordered the proceeding reopened." Id.

Petitioner argues that "[e]ven if Diep's removal order becomes final (again), his removal is not reasonably foreseeable" because Vietnam has agreed to issue travel documents for Vietnamese citizens who meet specific criteria, and since this agreement, "the U.S. has removed a small number of pre-1995 Vietnamese nationals with final removal orders," Id. at 13-14 (citing Ton v. Noem, No. ED CV 25-3348-DMG (DSR), 2025 WL 4058327, at *5 (C.D. Cal. Dec. 22, 2025) ("[b]etween September 2021 and September 2023, only four Vietnamese immigrants who came to the U.S. before 1995 were given travel documents and deported."); Nguyen v. Noem, No. 8:25-CV-02654-HDV-DSR, 2025 WL 3898489, at *4 (C.D. Cal. Dec. 19, 2025) (Vietnam has only accepted "some" people for removal since the MOU on a "case-by-case basis")). Petitioner asserts that, "[a]ccording to uncontroverted expert attestation," Petitioner is unlikely to be issued travel documents by Vietnam given that Petitioner's family "allied with the U.S. in the Vietnam War," Petitioner fled Vietnam as refugees in 1978, Petitioner "neither speaks Vietnamese nor has any family or other ties remaining in Vietnam," and Petitioner is ethnically Chinese. Id. at 14-15. Petitioner asserts one claim for relief, that his continued detention violates his due process rights in accordance with Zadvydas v. Davis, 533 U.S. 678, 690 (2001), because Petitioner's "detention is excessive—both in duration and nature—in relation to the government's interest, because his removal is not reasonably foreseeable." Id. at 15.

Respondents argue that the petition should be dismissed, asserting four arguments: (1) Petitioner is subject to mandatory detention pursuant to 1226(c); (2) such detention is constitutional; (3) Petitioner's claims are premature and speculative; and (4) this petition should be dismissed with prejudice as a successive petition. ECF No. 7. Respondents contend that Petitioner's mandatory detention is constitutional because such detention is not indefinite and serves an immigration purpose, "ensuring an alien's appearance for removal proceedings and

preventing him from committing further offenses." Id. at 3-4 (citing Demore v. Kim, 538 U.S. 510, 531 (2003)).

Next, Respondents assert that § 1226(c) is constitutional as applied to Petitioner because his detention "is not prolonged as it is due in large part to Petitioner's decisions to challenge his removal through the Board of Immigration Appeals and the Ninth Circuit United States Court of Appeals." Id. at 6. Further, Respondents assert that Petitioner's detention will end upon the conclusion of his removal proceedings, Petitioner "has also received adequate process and procedural safeguards," citing that Petitioner was provided a bond hearing in accordance with this court granting Petitioner's prior habeas petition, and the government has a strong interest in detaining Petitioner due to his criminal record. Id. at 6-7.

Respondents argue Petitioner's claims are premature and speculative because Petitioner is subject to detention under §1226 (c) and does not have a final order of removal. Id. at 7. Finally, Respondents contend that "because Petitioner argues once again against prolonged detention and argues his detention violates the Fifth Amendment of the Constitution, which is the same issue he previously raised in 1:24- cv-01238-SKO, the instant Petition should be dismissed with prejudice." Id. at 8 (citing Del Raine v. Adams, 58 Fed. Appx. 762 (9th Cir. 2003) and Brown v. Grondolsky, No. 08–5811 (NLH), 2009 WL 3030082, at *5 (D. N.J. Sept. 16, 2009)).

In Petitioner's reply, Petitioner argues that "Respondents provide no evidence to rebut [Petitioner's] showing of indefinite detention and so concede that his removal is not reasonably foreseeable." ECF No. 8, pg. 1. Petitioner asserts that the declaration provided by Respondents "lacks any information showing ICE has acted to secure removal since the removal order became final in July 2025," and "Respondents give no generalized information about removals to Vietnam of pre-1995 individuals, nor do they discuss whether [Petitioner] meets the MOU criteria or whether he is similar to people who have been accepted by Vietnam." Id. at 4.

Next, Petitioner contends that his claim is not premature because the constitutional issue addressed in Zadvydas "applies with equal force to [Petitioner's] case, regardless of his current detention authority." Id. at 6. Petitioner argues that the holding in Demore does not preclude Petitioner's as-applied due process challenge because the Supreme Court did not

"foreclose constitutional challenges to applications of the statute." Id. at 8. Finally, Petitioner challenges Respondents' claim that the petition is barred as successive, arguing that the rules barring successive petitions do not apply to noncitizens challenging their detention, Petitioner previously raised a procedural due process claim and now raises a substantive due process claim, and the instant petition "relies on events that post-date his earlier petition." Id. at 12.

## II. DISCUSSION

The undersigned finds that Petitioner has established his detention violates due process and the undersigned will therefore recommend the petition be granted and Petitioner be released immediately with appropriate conditions of release.

### A. Successive Petition

The undersigned finds that Respondents' successive petitions argument is without merit. Respondents contend that because Petitioner previously raised a Due Process challenged to his prolonged detention in Diep v. Wofford, 2025 U.S. Dist. LEXIS 33818, 2025 WL 604744, the instant petition should be denied. See ECF No. 7, pg. 8. In Petitioner's prior habeas action, he brought a claim arguing his prolonged detention absent a bond hearing violates his due process rights. See Diep v. Wofford, 2025 U.S. Dist. LEXIS 33818, 2025 WL 604744, at *1. There, the Magistrate Judge found "Petitioner's prolonged detention without a bond hearing before an IJ violates his Fifth Amendment due process rights" and ordered that Petitioner be provided a bond hearing. Id. at *14.

First, Petitioner's current habeas action raises a different claim for relief because Petitioner seeks immediate release, not a bond hearing. See ECF No. 1, pg. 16. Second, Respondents fail to mention that the prior petition was granted upon finding that Petitioner's detention violates his rights and Petitioner was afforded his requested relief. Diep at *14. Indeed, the cases cited by Respondents in support of their argument that the petition should be dismissed as successive are all cases where the petitioner's successive petition raises the same claims as prior habeas actions, which had already been dismissed. See ECF No. 7, pgs. 7-8; see Del Raine v. Adams, 58 F. App'x 762, 762 (9th Cir. 2003) ("[t]he district court properly dismissed Del

Raine's petition as successive because **he raises the same claims raised in a prior habeas petition, and denied on the merits** by the Middle District of Pennsylvania")(emphasis added); Brown v. Grondolsky, No. : 08-5811 (NLH), 2009 U.S. Dist. LEXIS 84461, at *8 (D.N.J. Sep. 16, 2009) ("[i]n essence, Brown is challenging his sentence computation **on the same grounds as alleged in his first § 2241 habeas petition, which was denied**") (emphasis added). Thus, the instant facts are distinct and do not involve the same claims as raised in the prior petition, and the undersigned accordingly recommends the motion to dismiss be denied as to Respondents' argument that the petition is successive.

**B. Detention Authority**

When the Government wants to remove a noncitizen,[3] the normal path is through removal proceedings, which require an evidentiary hearing before an immigration judge. 8 U.S.C. § 1229(a). After a noncitizen is ordered removed, ICE "shall remove the alien from the United States within a period of 90 days . . . ." (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the "date the order of removal becomes administratively final." Id. § 1231(a)(1)(B)(i). As relevant here, an order of removal becomes administratively final upon the dismissal of an appeal by the Board of Immigration Appeals (BIA). See § 1241.1(a).

Here, Parties agree that Petitioner's detention is governed by §1226 (c) because, following re-opening of Petitioner's removal proceedings, his removal order was timely appealed and that appeal remains pending. In Demore, the Supreme Court held that mandatory detention under § 1226(c) is facially constitutional. See Demore v. Hyung Joon Kim, 538 U.S. 510 (2003). Later, in Nielsen v. Preap, 586 U.S. 392, 139 S. Ct. 954, 203 L. Ed. 2d 333 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420.

/ / /

[3] The court prefers the term "noncitizen" to "alien." Because the regulatory language at issue frequently uses the term "alien," the court will use the terms interchangeably in this order.

With regard to as-applied due process claims arising from § 1226(c) detention, "[t]he Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1226(c)." Loba L.M. v. Andrews, No. 1:25-cv-00611-JLT-SAB, 2025 WL 2939178, at *4 (E.D. Cal. Oct. 16, 2025), report and recommendation adopted, 2025 U.S. Dist. LEXIS 224970, 2025 WL 3187577 (E.D. Cal. Nov. 14, 2025). "[T]he First, Second, and Third Circuits have found that 'the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [that section].'" Id. at *5 (quoting Reid v. Donelan, 17 F.4th 1, 7 (1st Cir. 2021); see also Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 209-10 (3d Cir. 2020) (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Noncitizens detained pursuant to § 1226(c) are "not statutorily entitled to a bond hearing." Avilez v. Garland, 69 F.4th 525, 530 (9th Cir. 2023) However, Petitioner asserts a constitutional due process claim, not a statutory claim.

### C. Due Process Claim

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94.

With regard to substantive due process rights, "[a]t the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the context of pretrial detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in

relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). A judge within this Circuit analogized this framework to the immigration detention context as follows:

> As the Court in Zadvydas explained, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." 533 U.S. at 693, 121 S.Ct. 2491. Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk. See id. at 690-91, 121 S.Ct. 2491.
>
> Padilla, 704 F. Supp. 3d at 1171-72; see also Larios v. Wofford, No. 1:26-cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).

The undersigned joins the Courts in this circuit which have determined that noncitizens subject to mandatory detention under § 1226(c) may be entitled to habeas relief when their detention is unconstitutionally prolonged. See K. v. Golden State Annex Detention Facility, et. al., No. 1:25-CV-01694-TLN-DMC, 2026 WL 2070021, at *2 (E.D. Cal. July 17, 2026) (finding petitioner's continued detention pursuant to § 1226(c) absent a bond hearing violated due process). Courts have applied differing tests when making such determinations. See e.g. Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 LX 57468, at *19-20 (W.D. Wash. May 23, 2019) (analyzing eight factors); K. v. Golden State Annex Detention Facility, et. al., No. 1:25-CV-01694-TLN-DMC, 2026 WL 2070021, at *2 (E.D. Cal. July 17, 2026) (applying the test established in Lopez v. Garland, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022)); Morales v. Facility Adm'r, No. 5:26-cv-03825-SSS-BFM, 2026 LX 324182, at *13 (C.D. Cal. July 15, 2026) (applying Zadvydas framework); Singh v. Warden of the Golden State Annex ICE Det. Facility, No. 1:26-cv-00048 DJC SCR, 2026 LX 171849, at *11-15 (E.D. Cal. Apr. 3, 2026) (considering three factors established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976)); Campos v. Chestnut, No. 1:26-cv-01330 DJC SCR, 2026 LX 345096, at *21 (E.D. Cal. June 24, 2026) ("Applying these [Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024)] factors to conclude that Petitioner's current detention violates substantive due process").

/ / /

/ / /

Respondents assert that "there is a general dearth of guidance on the appropriate test or standard to apply to an as-applied challenge to prolonged detention claims," arguing that under any test, Petitioner's detention is constitutional. ECF No. 7, pg. 5. Respondents argue that "Petitioner's claims are premature and speculative" because Petitioner is not yet subject to a final order of removal. Id. at 7. As explained in the following section, the undersigned finds that, in accordance with Ninth Circuit precedent, the standard for determining whether prolonged detention violates due process as articulated in Zadvydas is not limited to the period following a final order of removal. See Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008). Further, Petitioner here was previously subject to a final order of removal for over six months, ECF No. 1, pg. 1, before his removal proceedings were reopened.[4] Respondents here have previously had six months to effectuate Petitioner's removal and thus, the record is developed to sufficiently consider whether "the detention in question exceeds a period reasonably necessary to secure removal." Zadvydas v. Davis, 533 U.S. 678, 699 (2001).

1. *Zadvydas*

In Zadvydas, the Supreme Court noted that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Accordingly, the Supreme Court held that after a presumptively reasonable six-month period of detention,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed

[4] Petitioner contends that Petitioner was previously subject to a final order of removal from July 11, 2025, until January 22, 2026, "when the Board granted reopening [of Petitioner's case]." ECF No. 1, pg. 13. Respondents state that "[o]n July 11, 2025, the Board of Immigration Appeals (BIA) dismissed Petitioner's appeal," of his prior order of removal. ECF No. 7, pg. 2. An order of removal becomes final "[u]pon dismissal of an appeal by the Board of Immigration Appeals." 8 CFR § 1241.1. Respondents then state that Petitioner's motion to reopen his removal proceedings was granted on January 22, 2026. See ECF No. 7, pgs. 2.-3. Thus, Respondents concede that Petitioner was previously subject to a final order of removal for over six months, from July 11, 2025, to January 22, 2026, during which time Respondents failed to effectuate Petitioner's removal.

> must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.
>
> Id. at 701.

The undersigned finds that though Petitioner is not subject to a final order of removal, Petitioner may be entitled to relief under Zadvydas, in accordance with Ninth Circuit precedent. In Prieto-Romero, the Ninth Circuit considered whether a petitioner detained pursuant to § 1226(a) could pursue a due process claim under Zadvydas, concluding

> that an alien is being held under § 1226(a), and not § 1231(a)(6), does not render Zadvydas inapplicable. Zadvydas held that § 1231(a)(6) did not contain any clear "indication of congressional intent to grant the Attorney General the power" to indefinitely detain. It would be incongruous for us to conclude, in the absence of clear evidence, that Congress intended *other* detention statutes to authorize the indefinite detention of aliens, where such detention would clearly pose the same constitutional concerns. Therefore, without clear congressional direction to the contrary, we conclude that § 1226(a), like § 1231(a)(6), also does not authorize indefinite detention. Consistent with Zadvydas, we construe the Attorney General's detention authority under § 1226(a) as limited to the "period reasonably necessary to bring about [an] alien's removal from the United States," even if continued detention in any particular litigant's case would not pose a constitutional problem.
>
> Prieto-Romero v. Clark, 534 F.3d 1053, 1062-63 (9th Cir. 2008) (internal citations omitted)(emphasis in original).

In accordance with Prieto-Romero, the undersigned finds that though Petitioner is detained pursuant to § 1226(c), he may be entitled to relief pursuant to Zadvydas because Zadvydas addresses the constitutionality of indefinite detention, regardless of the statute the petitioner is held under. Thus, undersigned disagrees with Respondents that "Petitioner's claims are premature and speculative," ECF No. 7, pg. 7, as the Ninth Circuit has concluded that Zadvydas relief is not limited to noncitizens subject to a final order of removal. See Yuehui Chen v. Noem, No. 5:26-cv-00397-SSS-DTB, 2026 LX 67661, at *14 (C.D. Cal. Feb. 13, 2026) ("application of the Zadvydas framework is not precluded by the administrative non-finality of Petitioner's removal order, and the Court will assess whether there is 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future' and whether the government has sufficiently rebutted that showing." (quoting Zadvydas, 533 U.S. at 701)); see

also Alvarez-Guatibonza v. Adelanto ICE Process Ctr., No. 5:26-cv-02157-KS, 2026 LX 350584, at *10-13 (C.D. Cal. June 15, 2026).

Respondents argue Petitioner's detention is constitutional, citing Demore. There, the Supreme Court held that mandatory detention under § 1226(c) is facially constitutional, distinguishing such detention from the facts in Zadvydas because first, "the aliens challenging their detention following final orders of deportation were ones for whom removal was "no longer practically attainable" and second, "[w]hile the period of detention at issue in Zadvydas was indefinite and potentially permanent, the detention here is of a much shorter duration." Demore, 538 U.S. at 527-29. Petitioner here argues his removal is no longer attainable, citing the fact that he was subject to an administratively final order of removal for six months and Respondents were unable to successfully remove Petitioner. See ECF No. 1, pg. 11. Further, Petitioner argues that his removal to Vietnam is unattainable because Vietnam only issues a limited number of travel documents for Vietnamese citizens, and "[a]ccording to uncontroverted expert attestation," Petitioner is unlikely to be issued travel documents by Vietnam given that Petitioner's family "allied with the U.S. in the Vietnam War," Petitioner fled Vietnam as refugees in 1978, Petitioner "neither speaks Vietnamese nor has any family or other ties remaining in Vietnam," and Petitioner is ethnically Chinese. Id. at 14-15.

As to the length of detention, Respondents here acknowledge that the Court in Demore assumed that "in the majority of cases, detention lasts for less than 90 days," and "in 15% of cases, detention lasted longer where the noncitizen appealed to the BIA, and that such appeals took an average of an additional four months." ECF No. 7, pg. 4, n. 3 (citing Demore, 538 U.S. at 529). Here, Petitioner has been detained since January 24, 2024, over 900 days, more than 10 times longer than the 90-day period cited by the Supreme Court as standard for a majority of cases, or over 29 months, five times the duration contemplated in the event of an appeal. Thus, Petitioner has distinguished his situation from Demore, challenging § 1226(c) as applied to Petitioner.

/ / /

/ / /

Petitioner argues there is no significant likelihood of his removal in the reasonably foreseeable future based on the fact that he was not removed during the six months that his removal order was final, the limited number of travel documents issued by Vietnam, and that, due to Petitioner's circumstances, including that he is not ethnically Vietnamese and that his family supported the United States during the Vietnam War, Petitioner is less likely to be eligible for travel documents from Vietnam. See ECF No. 1, pgs. 14-15. Respondents assert that Petitioner's claims are "premature and speculative" because "Petitioner does not know that Vietnam will refuse to accept him if an administratively final order of removal becomes due, as Petitioner notes that Vietnam has previously agreed to take some nationals into their country. The administrative record is devoid of ICE contacting Vietnam for the issuance of a travel document." ECF No. 7, pg. 7.

As addressed, the undersigned finds Petitioner's claims are not premature nor speculative because Zadvydas relief is not limited to noncitizens subject to a final order of removal. Further, the Supreme Court in Zadvydas explicitly rejected the Fifth Circuit's determination that a noncitizen must "show the absence of *any* prospect of removal," instead imposing the "no reasonable likelihood of his removal in the foreseeable future" standard. Zadvydas, 533 U.S. at 702 (emphasis in original). Indeed, Petitioner alleges that the specific requirements for Vietnamese citizens to be eligible for travel documents are not public. See ECF No. 1, pg. 13 ("In November 2020, the U.S. and Vietnam entered into a Memorandum of Understanding ("MOU") regarding pre-1995 refugees. Nguyen, 796 F.Supp.3d at 714. The MOU aimed to create a review process for the issuance of travel documents for Vietnamese citizens ordered removed from the U.S. However, the MOU limits removal to individuals meeting certain criteria, some of which have been shielded from the public").

Respondents do not address this issue and therefore concede that it is not possible for Petitioner to know that Petitioner is ineligible for travel documents issued by Vietnam because such information is not public. That "[t]he administrative record is devoid of ICE contacting Vietnam for the issuance of a travel document," ECF No. 7, pg. 7, does not help Respondents. Though the undersigned makes no specific finding as to this issue because Petitioner does not

raise it nor is it necessary for the adjudication of Petitioner's claim, the lack of evidence that Respondents attempted to obtain travel documents when Petitioner was subject to a final order of removal for six months may indicate that Respondents are aware that Petitioner is not eligible under the MOU.

Upon the facts provided by Petitioner, which Respondents do not challenge, the undersigned finds Petitioner has made the necessary showing to establish no significant likelihood of his removal in the reasonably foreseeable future for the burden to shift to Respondents to rebut such showing.[5] Next, the undersigned finds that Respondents' have failed to rebut Petitioner's showing. The undersigned has previously addressed these issues in A.A.M. v. Andrews, informed by the Ninth Circuits' holding in Prieto-Romero. See A.A.M. v. Andrews, No. 1:25-CV-01514-DC-DMC (HC), 2026 U.S. Dist. LEXIS 89563 (E.D. Cal. Apr. 21, 2026) (adopted in full). The Ninth Circuit concluded Prieto-Romero was ineligible for relief under to Zadvydas, because he failed to establish he was stuck in the "removable-but unremovable-limbo" considering: (1) there is a country where Prieto-Romero can be removed to that will accept him and does not violate our laws and (2) that the government has taken the steps to demonstrate they are in a position to effectuate Prieto-Romero removal. Prieto-Romero, 534 F.3d at 1063.

Respondents fail to address the likelihood of Petitioner's removal in the reasonably foreseeable future such as establishing that Petitioner may be eligible for travel documents from Vietnam, pursuant to the MOU, nor do Respondents show they have taken the steps to demonstrate they are in a position to effectuate Petitioner's removal. Indeed, Respondents do not explain why they were unable to remove Petitioner during the six months that his order of removal was final, and how, upon Petitioner's order of removal becoming final again, those circumstances have changed, making removal likely.

/ / /

---

[5] While the undersigned acknowledges Petitioner's criminal history, the Ninth Circuit has held that such history is irrelevant to the Zadvydas reasonable foreseeability analysis. See Tuan Thai v. Ashcroft, 366 F.3d 790, 797 (9th Cir. 2004); Yakoub v. Marin, No. 5:26-cv-01399-JAK, 2026 WL 922015 at *6 (C.D. Cal. Mar. 31, 2026); Davoodi v. Chestnut et. al., No. 1:26-cv-00033-DC-DMC (HC), ECF No. 24.

Further, Respondents do not provide any approximate timeline for when Petitioner's appeals may be resolved nor, as stated previously, is there any indication that Respondents would be prepared to effectuate Petitioner's removal upon the conclusion of such proceedings. See William v. Chestnut, No. 1:26-cv-04118-DAD-CSK (HC), 2026 LX 205261, at *3 (E.D. Cal. June 5, 2026) ("Moreover, respondent has not provided any evidence that petitioner's removal would be prompt following a denial of his appeal to the BIA, as respondent has not, for example, shown that a travel document has been issued or could be issued swiftly").

The undersigned finds that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future and therefore, Petitioner is entitled to relief. Thus, the undersigned will recommend that the petition be granted and Petitioner be released with appropriate conditions of supervision.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1. It is RECOMMENDED that Respondents' motion to dismiss, ECF No. 7, be DENIED;
2. It is RECOMMENDED that the petition for writ of habeas corpus, ECF No. 1, be GRANTED;
3. It is RECOMMENDED that Respondents be ordered to IMMEDIATELY RELEASE PETITIONER under appropriate conditions of supervision.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 29, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE